ROOKWOOD POTTERY CO., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9593, 18125, 28420. Promulgated April 10, 1928.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Harry LeRoy Jones, Esq.*, and *John D. Kyler, Esq.*, for the respondent.

OPINION.

SIEFKIN: The sole question to be decided under Docket Nos. 9593 and 18125, relating to the years 1921 and 1922, is whether the respondent has erred in failing to include in invested capital of the petitioner for those years the amount of $16,140.92, which, it is alleged, is the value of intangibles acquired for stock by the petitioner at organization in 1890.

The evidence discloses that the Rookwood Pottery was founded by Mrs. Storer about 1880, at which time, and for some years thereafter, the enterprise was devoted to the advancement of the art of pottery making. In 1883, William Watts Taylor became a partner, and in 1889, Mrs. Storer transferred her interest in the business to him. During this period Rookwood products had been given recognition in a number of art exhibits, and the United States Government had issued to it a patent on a slip painting process and two trademarks. In 1890 the petitioner was organized and $40,000 of its capital stock was issued to William Watts Taylor for the assets of the Rookwood Pottery. Of this amount $16,140.92 was allocated to intangibles on the books of the petitioner by order of the directors of the petitioner. The intangible assets were written off its books on or about February 20, 1894, by a charge against the surplus account. No records of the petitioner's predecessor are available nor are the books of account of the petitioner available as regards the first five years of its existence. The minutes of the directors' meetings of the petitioner are submitted in evidence and show earnings and invested capital for this period. All of the original incorporators of the petitioner are now dead. The president of the petitioner who was, however, not connected with this enterprise in 1890, testified that prior to 1890 the cost of developing the secret processes and formulae might have been in excess of $16,140.92.

Section 326 (a) of the Revenue Act of 1921 provides as follows:

That as used in this title the term "invested capital" for any year means (except as provided in subdivision (b) and (c) of this section):

\*        \*        \*        \*        \*        \*        \*

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest:

In the present proceeding the actual cash value of the property acquired for the stock is not shown. The testimony of the petitioner does not prove with any certainty the value of the intangibles at the time of acquisition. The only evidence before us is the statement in the petition, admitted by the respondent, to the effect that intangibles

were placed upon the books of the petitioner at $16,140.92. The mere fact that such a value was put upon them in the books does not prove their value. No evidence is submitted as to the earnings of the Rookwood Co. prior to 1890, the evidence being to the effect that by 1889 the business was self-supporting. The evidence indicates that prior to this time the business was not profitable.

Evidence is submitted as to the earnings of the petitioner subsequent to acquisition of these assets, but we have heretofore held that while subsequent earnings may be considered of evidentiary value for purposes of corroborating the value of intangible assets established by prior earnings and by other evidence, such evidence alone can not be the basis of a determination as to the value of intangible assets. See *William H. Jackson*, 2 B. T. A. 411, and *J. J. Gray, Jr.*, 2 B. T. A. 672.

We must, therefore, approve the action of the Commissioner in excluding this amount from invested capital.

The only issue arising under Docket No. 28420, relating to the years 1923, 1924, 1925 and 1926, concerns the increase of the pottery inventories of the petitioner by the respondent during those years. Due to the fact that there was about a 100 per cent turnover of faience during each of these years, no objection is raised to the application of the respondent's method to this item.

The evidence discloses that the character of the business of the petitioner renders it impossible to keep a record of the cost of each article manufactured. Each piece of pottery is distinctive, and not until it has gone through all the processes of manufacture, is it certain what its value will be or whether it will have any value.

The department which manufactures an article fixes its selling price, which is marked on each article. The pottery is then consigned to agents of the petitioner throughout the country. When it is found that goods of a certain description do not sell in a particular locality the goods are recalled and sent to an agent in another section. Occasionally, but not frequently, the selling price of a piece of pottery is reduced in order to encourage a sale. At all times when inventories are taken the petitioner takes into account the merchandise on hand at the plant and on consignment. The physical inventory represents goods on hand which were manufactured in a number of previous years.

The goods in process of manufacture are given a value based upon an assumed selling price of the finished article and reduced in accordance with the state of completion of the particular article. Raw materials are inventoried at cost, and articles purchased by petitioner for resale are listed at selling price.

During the years in question the respondent increased the cost of pottery inventory of petitioner at the beginning and end of each

period by applying the ratio of the current year's cost of production to production at sales price, to the entire pottery inventory at the end of each period.

Section 203 of the Revenue Act of 1921, and section 205 of the Revenue Acts of 1924 and 1926, provide as follows:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

In the present proceeding the petitioner has not shown that its method of taking inventories conforms as nearly as may be to the best accounting practice in the trade or business. We must then determine whether its method most clearly reflects the income.

The method employed by the petitioner of arriving at cost of production of the physical inventory is to deduct from the inventory a reserve which is calculated to represent expected profit, and which reflects cumulatively the cost of production during all prior years.

There is no doubt that the method employed by the respondent fails to reflect the true cost of production of the goods on inventory, but the same may be said of the petitioner's method. During the years in controversy the petitioner has inventoried its pottery merchandise at assumed selling prices, and has attempted to reduce this to cost by the application of a reserve which reflects the cumulative cost of production for all prior years. However, the evidence discloses that petitioner assumed that the proportion of goods on consignment manufactured in the various years was the same as the goods at the plant. Furthermore, the petitioner has inventoried goods in process of manufacture at assumed selling prices when there was no assurance that such goods would ever be finished, and if so, that they would have the value assigned to them. Prior to 1927 the petitioner kept no record of the date of manufacture of goods on inventory.

The petitioner has accepted the method employed by the respondent with respect to the period prior to 1920.

In *W. P. Weaver and R. L. Dunn*, 2 B. T. A. 709, we stated:

The taxpayers appear to have accepted the determination of the Commissioner for the taxable year 1918, in which their income from the Greenwood Pickery is determined upon the basis of the closing inventory of 1918, which, for purposes of the year 1919 is now sought to be increased. Determinations of the Commissioner involving inventories which have compensating effects upon succeeding taxable years are not to be disturbed except by clear and convincing evidence of error, particularly in cases in which the taxpayer has received the benefit of alleged error in an earlier year, barred at the time of appeal to this Board by the statute of limitations.

In *The Thomas Shoe Co.*, 1 B. T. A. 124, we stated:

* * * What the inventory practice is, ·is of some importance; that the practice should be uniform is of the highest importance.

In *Berkshire Cotton Manufacturing Co.*, 5 B. T. A. 1231, we stated:

Furthermore, at no time in this proceeding has the petitioner contended that the method used by the Commissioner for the determination of the cost of goods sold is incorrect or not in accordance with sound accounting principles; nor has it contended that the results obtained by the Commissioner through the use of that method are incorrect, except for such inference as may be drawn from the contention contained in the brief * * *.

A greater responsibility rests upon the petitioner than the mere proving that the methods used by the Commissioner are wrong. We can not assume, though the petitioner succeed in proving the fallacy of the Commissioner's methods that the results obtained thereby are necessarily incorrect. That is something which, if true, the petitioner must establish by competent evidence. We are not so much concerned with the methods employed as we are with the results obtained through the use of the methods. * * *

The petitioner has failed to prove that its method of arriving at inventories at cost more clearly reflects its income than the method employed by the respondent, and the holding of the respondent will, therefore, not be disturbed.

*Judgment will be entered for the respondent.*